JNE/SER

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RECEIVE

MAR 02 2011
U.S. CLE
MINNEAPOLIS, MINN

Jerry S. Hanson,

        Plaintiff,

v.

Zimmer, Inc., Zimmer Holdings, Inc.,
Wilson/Phillips Holdings, Inc. a/k/a
Zimmer Wilson Phillips, and Zimmer
Orthopaedic Surgical Products, Inc.,

        Defendants.

Civil Case No.:

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

---

Plaintiff Jerry S. Hanson, for his causes of action against the above-named

Defendants, alleges and states on information and belief as follows:

**NATURE OF THE CASE**

1.    This is an action for damages suffered by Jerry S. Hanson, as a direct and

proximate result of Defendants' wrongful conduct in connection with the development

design, manufacture, distribution, and selling of Defendants' knee replacement product,

the Zimmer NexGen Legacy Posterior Stabilized Flex femoral component, and the

NexGen MIS tibial component of the Zimmer NexGen total knee replacement system

(hereinafter "Zimmer NexGen Knee").

2.    Defendants knew or should have known that the Zimmer NexGen Knee

can loosen in patients, such as Plaintiff Jerry Hanson, causing personal injury,

MAR 02 2011

significant pain, and loss of movement, and that this injury can only be remedied through subsequent revision surgery and/or knee replacement. Further, Defendants misled health care professionals and the public into believing that the Zimmer NexGen Knee was safe and effective for use in knee replacement surgery; engaged in deceptive, misleading and unconscionable promotional or sales methods to convince health care professionals to utilize the Zimmer NexGen Knee, even though Defendants knew or should have known that the Zimmer NexGen Knee was unreasonably unsafe; and failed to warn health care professionals and the public about the safety risks of the Zimmer NexGen Knee.

## PARTIES

3.     Plaintiff Jerry S. Hanson is a citizen of the State of Minnesota, and a resident of Princeton, Minnesota.

4.     Defendant Zimmer, Inc. is a corporation organized and existing under the laws of Delaware, and has its principal place of business located in Warsaw, Indiana.

5.     Defendant Zimmer Holdings, Inc. is a corporation organized and existing under the laws of Delaware, and has its principal place of business located in Warsaw, Indiana.

6.     Defendant Wilson/Phillips Holdings, Inc. a/k/a Zimmer Wilson Phillips is a corporation organized and existing under the laws of Texas, and has its principal place of business in Richardson, Texas.

2

7.     Defendant Zimmer Orthopaedic Surgical Products, Inc. is a corporation organized and existing under the laws of Ohio, and has its principal place of business in Dover, Ohio.

8.     At all times material hereto, Defendants developed, designed, tested, manufactured, distributed, marketed, and sold the Zimmer NexGen Knee. Defendants' products, including the Zimmer NexGen Knee, are sold throughout the world, including within the state of Minnesota.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10.     Venue in this action properly lies in this judicial district pursuant to 28 U.S.C. § 1391(a), as a substantial number of the events, actions or omissions giving rise to Plaintiffs claims occurred in this district. At all times material hereto, Defendants conducted substantial business in this district.

## FACTUAL BACKGROUND

### Knee Replacement Background

11.     Total knee arthroplasty ("TKA"), also called total knee replacement, is a common medical procedure. The surgery is designed to help relieve pain and improve joint function in people with severe knee degeneration due to arthritis or trauma.

12.     The TKA procedure is typically performed by separating the muscles and ligaments around the knee to expose the inside of the joint. The ends of the thigh bone (femur) and the shin bone (tibia) are removed as is often the underside of the kneecap (patella).

13.     Generally the results of total knee arthroplasty in long-term reports are very good, with prosthetic survival rates of 92–99 % at 14–17 years (Font-Rodriquez et al. 1997[1], Gill and Joshi 2001[2], Keating et al. 2002[3]).

14.     Mechanical loosening means that for some reason (other than infection) the attachment between the artificial knee and the bone has become loose.

15.     Loosening can occur with any component of the artificial knee (i.e. the femoral, the tibial or the patellar component), and can be diagnosed using radiography or x-ray. In patients with a loose knee joint, x-ray imaging may show one or more radiolucent lines around the contours of the artificial knee joint.

16.     A loose knee replacement may cause metal or plastic wear particles to circulate in the knee joint, cause joint inflammation and swelling, and cause osteolysis or loss of bone in the regions around the knee, resulting in pain and disability for the patient.

---

[1] Font-Rodriques, DE et al., Survivorship of cemented total knee arthroplasty, Clin. Orthop 345: 79-86 (1997)

[2] Gill GS, Joshi AB. SO. Long-term results of cemented, posterior cruciate ligament-retaining total knee arthroplasty in osteoarthritis, Am J Knee Surg. 14(4):209-14 (2001).

[3] Keating, EM, Meding, JB, Faris, PM, Ritter, MA. Long-Term Followup of Nonmodular Total Knee Replacements Clinical Orthopaedics & Related Research: 404: 34-39 (November 2002).

17.     Once the pain becomes unbearable, or the individual loses function of the knee, or the knee becomes unstable, another surgery is usually required to revise the knee replacement. A loose, painful artificial knee can usually, but not always, be revised.

18.     The purpose of knee revision surgery is to remove a failed knee implant and replace it with a new one. In a revision of a failed TKA, the orthopaedic surgeon must remove the components used for the original surgery. The orthopaedic surgeon's goal is to restore stability and alignment to the knee, adding bone graft if needed, custom wedges or trabecular metal wedges or augments, and often using revision implants.

19.     Generally the results of a revision surgery are not as good as the initial TKA, and include higher risks of complications, including reduced range of motion and the need for a subsequent revision.

### The Zimmer NexGen Knee

20.     Zimmer was founded in 1927, and purports to be a worldwide leader in the design and manufacture of orthopaedic reconstructive, spinal and trauma devices, dental implants, and related orthopaedic surgical products.

21.     The Zimmer NexGen Knee uses a "high-flex" porous femoral component made of a cobalt-chromium-molybdenum alloy. A porous coat of sintered titanium metal is applied to the surfaces of the implant that are designed to contact bone. In this

5

fashion the femoral component is designed to achieve stability by having the patients own bone grow into the femoral implant. The design was intended to achieve a greater degree of flexion or bending of the knee.

22.     The Zimmer NexGen Knee also uses a stemmed tibial component that is designed to be assembled within the patient thereby allowing for minimally invasive surgery techniques.

23.     The Defendants manufactured, labeled, packaged, distributed, supplied, marketed, advertised. and/or otherwise engaged in all activities that are part and parcel of the sale and distribution of a medical device and, by said activities, caused the Zimmer NexGen Knee to be placed into the stream of commerce throughout the United States.

24.     Defendants made, participated in and/or contributed to filings with the FDA in conjunction with the approval process for the Zimmer NexGen Knee.

25.     Upon information and belief, Defendants were in control of the design, assembly, manufacture, marketing, distribution, packaging, labeling, processing, supplying, promotion, sales, and the issuance of product warnings and related information with respect to the Zimmer NexGen Knee.

26.     Defendants were at all times material hereto subject to the laws of the United States of America, including provisions relating to the FDA, and the rules and

6

regulations thereof, in conjunction with the approval process, labeling, and other aftermarket activities that pertain to the Zimmer NexGen Knee.

27.     The Zimmer NexGen Knee has been widely advertised, marketed and represented by the Defendants as a safe and effective medical device for use in TKA procedures.

### Problems with the NexGen Knee

28.     In 2007, The Journal of Bone and Joint Surgery (British Edition), published a peer reviewed study by professors at the Seoul National University College of Medicine titled, *High Incidence of Loosening of the Femoral Component in the Legacy Posterior Stabilized-Flex Total Knee Replacement.* The study showed that 38% of the implanted LPS high flex knees were loose shortly after 2 years post implant. From the group of patients with loose knees, over half (56%) had their knee revised due to pain.

29.     In March 2010, Dr. Steven Weeden, of the Texas Hip and Knee Center, presented at a national meeting of the American Association of Orthopedic Surgeons a study reporting a higher than expected rate of early loosening in cemented primary total knee replacements when a MIS tibial component was used without an additional modular stem. In the MIS tibial components placed without an additional modular stem the failure rate was 24% versus 4.2% with a stem.

30.     On or around April 2010, Defendants sent an "Urgent Device Correction" letter to all customers using the MIS stemmed tibial components. In that letter,

7

Defendants advised customers of a change in labeling and recommended usage of the MIS stemmed tibial component:

> Zimmer is enhancing the labeling for the NexGen MIS Tibial Component in several important ways. The changes to the labeling include the following recommendations:
>
> 1.  to achieve adequate visualization and access if an MIS approach is used,
>
> 2.  to use a drop down stem extension with the NexGen MIS Tibial Component,
>
> 3.  to fully cement and pressurize the anterior and posterior surfaces of the tibial component, and
>
> 4.  to carefully use bone cement application per the manufacturer's instructions.

31.  On September 13, 2010, the FDA classified the Defendants efforts relating to the MIS stemmed tibial components as a Class II Recall.

32.  From the time that Defendants first began selling the Zimmer NexGen Knee in the United States, the product labeling and product information for the Zimmer NexGen Knee failed to contain adequate information, instructions, and warnings concerning implantation of the product and the increased risks that the Zimmer NexGen Knee can loosen in patients.

33.  Despite its knowledge of the serious injuries associated with use of the Zimmer NexGen Knee, Defendants engaged in a marketing and advertising program which as a whole, by affirmative and material misrepresentations and omissions, falsely

8

and deceptively sought to create the image and impression that the use of the Zimmer NexGen Knee was safe.

34.     Upon information and belief, Defendants downplayed and understated the health hazards and risks associated with the use of the Zimmer NexGen Knee and through promotional literature as well as sales visits to orthopaedic surgeons, deceived doctors and potential users of the Zimmer NexGen Knee by relaying positive information, while concealing the nature and extent of known adverse and serious health effects.

## FACTUAL ALLEGATIONS

35.     On August 28, 2007, orthopedic surgeon Gavin T. Pittman, M.D. implanted a Zimmer NexGen Knee system into Plaintiff Hanson, including a NexGen LPS-Flex femoral component and a MIS tibial component.

36.     Prior to August 28, 2007, Plaintiff Hanson and Dr. Pittman were exposed to the aforementioned advertising and marketing campaign directly by the Defendants.

37.     Plaintiff Hanson and Dr. Pittman, either through direct promotional contact with Sales Representative Defendants, through word-of-mouth from other health care providers, and/or through promotional materials, received the information the Defendants intended they receive, to-wit: that the Zimmer NexGen Knee system was safe and effective for use in TKA procedures.

38.     Plaintiff Hanson began experiencing severe and debilitating pain shortly after implantation.

39.     Plaintiff returned to Dr. Pittman numerous times due to ongoing pain and discomfort related to his Zimmer NexGen Knee system. Radiography performed during these visits revealed progressive radiolucent lines over the proximal tibia, as well as osteolysis over the posterior femoral condyles.

40.     In May 2010, Dr. Pittman advised Plaintiff Hanson that his Zimmer NexGen Knee would need to be revised due to device failure, including a loosening of the components, and on June 24, 2010 this revision surgery was performed by Dr. Pittman.

41.     As a direct and proximate result of the implantation of the Zimmer NexGen Knee into Plaintiff's body, Plaintiff has suffered, and continues to suffer, the serious bodily injury, economic losses, and other damages more fully described below.

42.     Plaintiff did not discover, nor could he have discovered through the exercise of reasonable care, the defective nature of the Zimmer NexGen Knee until after this device had been implanted, loosened, and failed. Further, Plaintiff Hanson could not have known that Defendants had designed, developed, and manufactured the Zimmer NexGen Knee in such a way as to increase the risk of harm or injury to the device recipients until after it had been implanted, loosened, and failed.

## COUNT I

## (Strict Liability)

43.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein, and further states and alleges as follows:

44.     At all relevant times hereto, Defendants were engaged in the development, testing, manufacturing, marketing and sales of the Zimmer NexGen Knee. Defendants designed, manufactured, marketed, and sold the Zimmer NexGen Knee to medical professionals and their patients, knowing it would be implanted in patients for knee replacements.

45.     The Zimmer NexGen Knee as designed, manufactured, marketed and sold by Defendants reached Plaintiff without substantial change in its condition and was used by Plaintiff in a reasonably foreseeable and intended manner.

46.     The Zimmer NexGen Knee was "defective" and "unreasonably dangerous" when it entered the stream of commerce and was received by Plaintiff because it was dangerous to an extent beyond that which would be contemplated by the ordinary consumer. At no time did Plaintiff have reason to believe that the Zimmer NexGen Knee was in a condition not suitable for their proper and intended use among patients.

47.     The Zimmer NexGen Knee was used in the manner for which it was intended, that is, for artificial knee replacement. This use resulted in injury to Plaintiff.

48.     Plaintiff was not able to discover, nor could he have discovered through the exercise of reasonable care, the defective nature of the Zimmer NexGen Knee. Further, in no way could Plaintiff have known that Defendants had designed, developed, and manufactured the Zimmer NexGen Knee in such a way as to increase the risk of harm or injury to the recipients of it.

49.     The Zimmer NexGen Knee is defective in design because of its propensity to loosen and cause patients unnecessary pain and repeat surgical procedures.

50.     The Zimmer NexGen Knee is unreasonably dangerous because it was sold to Plaintiff without adequate warnings regarding, *inter alia*, the propensity of Zimmer NexGen Knee to loosen and cause serious pain and necessitate additional surgery: the post-marketing experience of higher rates of loosening and revision surgery with the Zimmer NexGen Knee; and the probability of suffering loosening and revision surgery.

51.     Defendants failed to develop and make available alternative products that were designed in a safe or safer manner, even though such products were feasible and marketable at the time Defendants sold the Zimmer NexGen Knee to Plaintiff.

52.     Defendants had knowledge and information confirming the defective and dangerous nature of the Zimmer NexGen Knee. Despite this knowledge and information, Defendants failed to adequately and sufficiently warn Plaintiff Hanson and Dr. Pittman that the Zimmer NexGen Knee causes serious injuries including, but not limited to, loosening and revision surgery.

53.     As a direct and proximate result of the defective and dangerous design and inadequate warnings of the Zimmer NexGen Knee, Plaintiff Hanson has suffered, and will in the future continue to suffer, various and debilitating injuries, economic loss, and other damages including, but not limited to, the cost of medical care, rehabilitation, lost income, permanent instability, loss of balance, immobility, bone loss, nerve damage, and pain and suffering, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT II

### (Products Liability - Failure to Warn)

54.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein, and further states and alleges as follows:

55.     Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the Zimmer NexGen Knee and, in the course of same, directly advertised or marketed the product to the FDA, health care professionals, and consumers, or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of the Zimmer NexGen Knee.

56.     Defendants failed to adequately warn health care professionals and the public, including Plaintiff Jerry Hanson and Dr. Pittman, of the true risks of the Zimmer NexGen Knee, including that the Zimmer NexGen Knee could loosen, cause severe

pain, bone loss, and other injury, and require further treatment, including revision surgery and/or knee replacement.

57.   Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the Zimmer NexGen Knee. Had they done so, proper warnings would have been heeded and no health care professional, including Dr. Pittman, would have recommended or used the Zimmer NexGen Knee, or no consumer, including Plaintiff Hanson, would have purchased or permitted the Zimmer NexGen Knee to be implanted into his body.

58.   The Zimmer NexGen Knee, which was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by Defendants, was defective due to inadequate post-marketing warnings and/or instruction because, after Defendants knew or should have known that there was reasonable evidence of an association between the Zimmer NexGen Knee and knee replacement loosening causing serious injury and pain. Defendants failed to provide adequate warnings to health care professionals and the consuming public, including Plaintiff Hanson, and continued to aggressively promote the Zimmer NexGen Knee.

59.   Defendants failed to perform or otherwise facilitate adequate testing, failed to reveal and/or concealed testing and research data, and selectively and misleadingly revealed and/or analyzed testing and research data.

60.    As a direct and proximate result of the defective and dangerous design and inadequate warnings of the Zimmer NexGen Knee, Plaintiff Hanson has suffered, and will in the future continue to suffer, various and debilitating injuries, economic loss, and other damages including, but not limited to, the cost of medical care, rehabilitation, lost income, permanent instability, loss of balance, immobility, bone loss, nerve damage, and pain and suffering, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT III

### (Products Liability - Defective Design)

61.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein, and further states and alleges as follows:

62.    Defendants were the researchers, developers, manufacturers, distributors, marketers, promoters, suppliers and/or sellers of the Zimmer NexGen Knee, which is a defective and unreasonably dangerous device to consumers.

63.    The Zimmer NexGen Knee is defective in its design in that it is not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design. The Zimmer NexGen Knee is defective in design in that it lacks efficacy and/or it poses a greater likelihood of injury than other knee replacement devices and similar knee replacement devices on the market and is more dangerous than ordinary consumers can reasonably foresee.

64.     If the design defect were known at the time of manufacture, a reasonable person would have concluded that the utility of the Zimmer NexGen Knee did not outweigh the risk of marketing a product designed in that manner.

65.     The defective condition of the Zimmer NexGen Knee rendered it unreasonably dangerous and/or not reasonably safe, and the Zimmer NexGen Knee was in this defective condition at the time it left the hands of the Defendants. The Zimmer NexGen Knee was expected to and did reach consumers, including Plaintiff Jerry Hanson, without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

66.     Plaintiff Hanson and Dr. Pittman were unaware of the significant hazards and defects in the Zimmer NexGen Knee.

67.     The Zimmer NexGen Knee was unreasonably dangerous and/or not reasonably safe in that it was more dangerous than would be reasonably contemplated by the ordinary user. During the period that Plaintiff used the Zimmer NexGen Knee, it was being utilized in a manner that was intended by Defendants.

68.     At the time Plaintiff received and used the Zimmer NexGen Knee, it was represented to be safe and free from latent defects.

69.     Defendants is strictly liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Defendants because of the design defects.

70.     Defendants knew or should have known of the danger associated with the use of the Zimmer NexGen Knee, as well as the defective nature of the Zimmer NexGen Knee, but has continued to design, manufacture, sell, distribute, market, promote and/or supply the Zimmer NexGen Knee so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the Zimmer NexGen Knee.

71.     As a direct and proximate result of the defective and dangerous nature of the Zimmer NexGen Knee, Plaintiff Hanson has suffered, and will in the future continue to suffer, various and debilitating injuries, economic loss, and other damages including, but not limited to, the cost of medical care, rehabilitation, lost income, permanent instability, loss of balance, immobility, bone loss, nerve damage, and pain and suffering, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT IV

### (Negligence)

72.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein, and further states and alleges as follows:

73.     At all relevant times, Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, marketing, sale, and distribution of Zimmer NexGen Knee, including a duty to ensure that the Zimmer NexGen Knee did not pose a significantly increased risk of bodily injury to its users.

74.     Defendants had a duty to exercise reasonable care in the advertising and sale of Zimmer NexGen Knee, including a duty to warn Plaintiff and other consumers, of the dangers associated with the Zimmer NexGen Knee that were known or should have been known to Defendants at the time of the sale of the Zimmer NexGen Knee to the Plaintiff.

75.     Defendants failed to exercise reasonable care in the design, testing, manufacture, marketing, sale and distribution of the Zimmer NexGen Knee because Defendants knew or should have known that the Zimmer NexGen Knee had a propensity to cause serious injury, including loosening and revision surgery.

76.     Defendants failed to exercise ordinary care in the labeling of the Zimmer NexGen Knee and failed to issue adequate pre-marketing or post-marketing warnings

to prescribing doctors and the general public regarding the risk of serious injury, including, loosening and revision surgery.

77.     Defendants knew or should have known that Plaintiff could foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

78.     Defendants breached their duty of reasonable care to Plaintiff by failing to exercise due care under the circumstances.

79.     As a direct and proximate result of the negligence of Defendants, Plaintiff Hanson has suffered, and will in the future continue to suffer, various and debilitating injuries, economic loss, and other damages including, but not limited to, the cost of medical care, rehabilitation, lost income, permanent instability, loss of balance, immobility, bone loss, nerve damage, and pain and suffering, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT V

### (Breach of Express Warranty)

80.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein, and further states and alleges as follows:

81.     Defendants advertised, labeled, marketed and promoted the Zimmer NexGen Knee, representing the quality to health care professionals, the FDA, Plaintiff

Jerry Hanson, and the public in such a way as to induce its purchase or use, thereby making an express warranty that the Zimmer NexGen Knee would conform to the representations. More specifically, Defendants represented that the Zimmer NexGen Knee was safe and effective, that it was safe and effective for use by individuals such as Plaintiff, and/or that it was safe and effective to treat Plaintiffs condition.

82.     The representations, as set forth above, contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

83.     The Zimmer NexGen Knee did not conform to the representations made by Defendants in that the Zimmer NexGen Knee was not safe and effective, was not safe and effective for use by individuals such as Plaintiff Hanson, and/or was not safe and effective to treat in individuals, such as the Plaintiff.

84.     At all relevant times, Plaintiff used the Zimmer NexGen Knee for the purpose and in the manner intended by Defendants.

85.     Plaintiff Hanson and Dr. Pittman, by the exercise of reasonable care, would not have discovered the breached warranty and realized its danger.

86.     The breach of these express warranties was a substantial factor in bringing about Plaintiff's injuries.

87. As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Hanson has suffered, and will in the future continue to suffer, various and debilitating injuries, economic loss, and other damages including, but not limited to, the cost of medical care, rehabilitation, lost income, permanent instability, loss of balance, immobility, bone loss, nerve damage, and pain and suffering, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VI

### (Breach of Implied Warranty)

88. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein, and further states and alleges as follows:

89. The Zimmer NexGen Knee was not reasonably fit for the ordinary purposes for which it was intended, and did not meet the expectations for the performance of the device when used in the customary, usual and reasonably foreseeable manner, nor was the Zimmer NexGen Knee minimally safe for its expected purpose.

90. At all relevant times, Plaintiff used the Zimmer NexGen Knee for the purpose and in the manner intended by Defendants.

91. Plaintiff Hanson and Dr. Pittman, by the exercise of reasonable care would not have discovered the breached warranty and realized its danger.

21

92.     The breach of these implied warranties was a substantial factor in bringing about Plaintiff's injuries.

93.     As a direct and proximate result of Defendants' breach of implied warranties, Plaintiff Hanson has suffered, and will in the future continue to suffer, various and debilitating injuries, economic loss, and other damages including, but not limited to, the cost of medical care, rehabilitation, lost income, permanent instability, loss of balance, immobility, bone loss, nerve damage, and pain and suffering, for which he is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## COUNT VII

### (Violation of State Deceptive Acts and Practices, Unfair Trade Practices, Consumer Protection, Merchandising Practices, and False Advertising Acts)

94.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein, and further states and alleges as follows:

95.     By reason of the conduct as alleged herein, and by inducing Plaintiff Jerry Hanson and Dr. Pittman to use the Zimmer NexGen Knee through the use of deception, fraud, false advertising, false pretenses, misrepresentations, unfair and/or deceptive practices and the concealment and suppression of material facts, including but not limited to fraudulent statements, concealments and misrepresentations identified herein

and above, Defendants violated the provisions of Minn. Stat. §§ 325F.67, 325F.69, 325D.13, and 325D.44.

96.     As a direct and proximate result of Defendants' statutory violations, Plaintiff Jerry Hanson was implanted with the Zimmer NexGen Knee, which would not have occurred had Defendants not used deception, fraud, false advertising, false pretenses, misrepresentations, unfair and/or deceptive practices and the concealment and suppression of material facts to induce Plaintiff Hanson and Dr. Pittman to use the product.

97.     By reason of such violations, and pursuant to Minn. Stat. § 8.31, subd. 3a, and §§ 325D.44, 325F.67, and 325F.68-70, Plaintiff Jerry Hanson is entitled to recover all of the monies paid for the product; to be compensated for the cost of the medical care arising out of the use of the product; and to recover any and all consequential damages recoverable under the law including, but not limited to, both past and future medical expenses, past wage loss, loss of future earning capacity, past and future pain, suffering, disability, and emotional distress. Plaintiff Jerry Hanson is entitled to seek compensatory damages, attorneys fees, injunctive and equitable relief, and other remedies as determined by the Court pursuant to Minn. Stat. § 8.31, subd. 3a, and §§ 325D.44, 325F.67, and 325F.68-70.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in his favor as follows:

1.      Awarding actual damages to Plaintiff incidental to the purchase and use of the Zimmer NexGen Knee in an amount to be determined at trial;

2.      Awarding the past and future costs of treatment for Plaintiff's injuries caused by the Zimmer NexGen Knee;

3.      Awarding injunctive relief, including disgorgement of all profits made from and monies paid for the Zimmer NexGen Knee;

4.      Awarding damages for Plaintiff's physical pain and suffering, including his permanent injuries;

5.      Awarding damages for Plaintiff's mental and emotional anguish;

6.      Awarding pre-judgment and post-judgment interest to Plaintiff;

7.      Awarding, if the Court allows an amended complaint on Plaintiff's motion, for punitive damages;

8.      Awarding the costs and expenses of this litigation to Plaintiff;

9.      Awarding reasonable attorneys' fees and costs to Plaintiff as provided by law;

10.     Economic and Non-Economic damages in an amount in excess of $75,000; and

11.     For such further relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all claims and issues so triable.

Dated: __2/28/11__

MESHBESHER & SPENCE, LTD.

By_____
Anthony J. Nemo (#221351)
Andrew Davick  (#332719)
1616 Park Avenue
Minneapolis, MN 55404
(612) 339-9121

Attorneys for Plaintiff Hanson